Bradford E. Englander (Bar No. 428617)
**WHITEFORD TAYLOR & PRESTON LLP**
3190 Fairview Park Drive, Suite 800
Falls Church, VA 22042-4510
Telephone: (703) 280-9081
e-mail: benglander@whitefordlaw.com

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SAVESOLAR CORPORATION, INC., *et al.*,[1] | ) | Case No.: 23-00045-ELG |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN SILVER BIRCH, INC.
AND BA SECURITIES, LLC AS INVESTMENT BANKERS FOR SAVESOLAR
CORPORATION, INC. EFFECTIVE AS OF JANUARY 26, 2024**

SaveSolar Corporation, Inc. ("**SaveSolar**" or the "**Debtor**"), the above-captioned debtor

and debtor in possession, by and through its counsel, hereby submits this application (the

"**Application**") for an entry of an Order, substantially in the form attached hereto as **Exhibit**

---

[1] The Debtors in these jointly administered Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, and its chapter 11 case number, are: SaveSolar Corporation, Inc. (1304), Case No. 23-00045-ELG; SaveSolar Alpha HoldCo, LLC (7389), Case No. 23-00046-ELG (the "**Initial Debtors**"); and SSC 1110 Kennebec MD, LLC, (9270), Case No. 23-00140-ELG; SSC 3233 Fifteenth DC, LLC (9145), Case No. 23-00141-ELG; SSC 1901 Brooks MD, LLC (0798), Case No. 23-00142; SSC 1323 I DC, LLC (5574), Case No. 23-00143-ELG; SSC 1321 Fifth DC, LLC (4090), Case No. 23-00144-ELG; SSC 1321 Fifth Canopy DC, LLC (3796), Case No. 23-00145-ELG; SSC 116 Irvington DC, LLC (3472), Case No. 23-00146-ELG; SSC 116 Irvington DC Canopy, LLC (6191), Case No. 23-00147-ELG; SSC 2501 N DC, LLC (6769), Case No. 23-00148-ELG; and SSC 3320 Wheeler DC, LLC (9082), Case No. 23-00149-ELG (the "**Affiliate Debtors**"). The Initial Debtors and the Affiliate Debtors are referred to collectively herein as the "**Debtors**"). On February 6, 2024, the Debtors filed their *Motion for Entry of an Order Closing Project Subsidiary Cases and Granting Related Relief* (Docket No. 330), which remains pending as of the date of this filing.

"**A**", authorizing and approving the retention and employment of Silver Birch, Inc., a Delaware corporation ("**SBG**") and BA Securities, LLC, a Pennsylvania limited liability company ("**BA**") as their investment bankers, pursuant to sections 327, 328 and 330 of title 11 of the United States Code, 11 U.S.C. §§101 *et seq*. (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 and 2016-1 of the Local Rules for the United States Bankruptcy Court for the District of Columbia (the "**Local Bankruptcy Rules**"), effective as of January 26, 2024.   In Support of the Application, the Debtor relies upon and incorporates by reference the Declaration of Jeffrey R. Manning, Sr. CTP, a true and correct copy of which is attached hereto as **Exhibit "B"** (the "**Manning Declaration**"). In further support of this Application, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.        The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue for this proceeding and the Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.        The statutory bases for the relief sought are §§ 327, 328 and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1.

3.        The Debtor consents to the entry of a final order by this Court in connection with this Application to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection with this Application consistent with Article III of the United States Constitution.

**BACKGROUND**

*A.*    ***General Background***

4.    On February 2, 2023, the Initial Debtors each filed for bankruptcy under chapter 11 of the Bankruptcy Code.

5.    Concurrently with the filing of its petition, SaveSolar filed Form 108, electing that the above-captioned cases be treated as a Complex Case under this Court's Complex Case Procedures. These cases are eligible for treatment under the Complex Case Procedures because the aggregate liabilities of all affiliated debtors total more than $10,000,000 and/or the total number of creditors is more than 50.  *See* Complex Case Procedures I(a)(1) and I(a)(2).

6.    On May 31, 2023, the Affiliate Debtors each filed for bankruptcy under chapter 11 of the Bankruptcy Code.  The Debtors' cases are jointly administered pursuant to the *Orders Directing Joint Administration.  See* Docket Nos. 39, 157.

7.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

8.    As of the date hereof, no trustee, examiner, or official committee has been appointed in these chapter 11 cases.

9.    Additional information regarding the Debtors' business may be found in the *Declaration of Karl Unterlechner In Support of Debtors' First Day Motions*, filed on February 8, 2023 (Docket No. 24) (the "First Day Declaration").

*B.*    ***The First Sale Process***

7.    On May 18, 2023, the Court entered the *Order Authorizing the Retention and Employment of CohnReznick Capital Markets Securities, LLC as Investment Banker for the Debtors and Debtors in Possession Effective as of March 16, 2023* (Docket No. 122), approving

the employment of CohnReznick Capital Markets Securities, LLC ("**CRC**") as investment banker for the Debtors in connection with the proposed sale of substantially all of the Debtors' assets.

8.      Following an auction conducted by CRC, on July 28, 2023, the Court entered the *Order (A) Approving Sale of Substantially All of Debtors' Property Free and Clear of Liens, Claims, Interests and Encumbrances; (B) Approving Amended Sales Contract; (C) Waiving Stays Under Bankruptcy Rule 6004; and (D) Granting Related Relief* (Docket No. 231) (the "**Sale Order**"), approving the sale of substantially all of the Debtors' assets to Edson Redball DevCo LLC, a Delaware limited liability (the "**Purchaser**"), pursuant to that certain Asset Purchase Agreement between the Debtors and the Purchaser (as amended, the "**Sales Contract**").

9.      The Sale Order included as Exhibit 1 the First Amendment to the Sales Contract (the "**First Amendment**"), providing, among other things, that the closing of the sale of substantially all of the Debtors' assets would occur in two phases. The first phase (the "**First Closing**") would cover the sale of all assets other than the Class B Membership Interest (as defined herein). The second phase (the "**Second Closing**") would cover the sale of the Class B Membership Interest.

10.      As more fully set forth in the *Report of Sale of Property of the Estate* (Docket No. 248), the First Closing occurred on August 7, 2023, and the Second Closing was scheduled to occur on December 29, 2023.

11.      Purchaser elected not to acquire the Class B Membership Interest, and consequently the Second Closing did not occur by the deadline specified in the First

Amendment.  Per the terms of the First Amendment, the Class B Membership Interest became an Excluded Asset (as defined in the Sales Contract).

## C.      *The Class B Membership Interest*

12.      As more fully set forth in the First Day Declaration, SaveSolar owns 100% of the equity of SSC SR JV Holdco, LLC, a Delaware limited liability company ("**JV HoldCo**"). JV HoldCo is not a debtor in these bankruptcy cases. In turn, JV HoldCo serves as the Class B managing member of Project Alpha TE JV, LLC ("**Project Alpha**"), a non-debtor limited liability company. Project Alpha is a tax equity joint venture into which the Debtors' solar construction projects were sold once they reached a certain degree of completion. The other member of Project Alpha is a non-debtor subsidiary of Solridge RE, LLC. SaveSolar's membership interest in Project Alpha through JV HoldCo is referred to as the Class B Membership Interest.

13.      As of SaveSolar's Petition Date, the Class B Membership Interest was encumbered by three potential liens or security interests.  The first priority interest was, and is, held by Amalgamated Bank ("**Amalgamated**") pursuant to a Pledge and Security Agreement dated as of July 27, 2022.  The Debtors are informed that the amount of Amalgamated's claim was $1,654,656.32 as of August 1, 2023.[2]  The second priority interest was held by LRC SaveSolar Investco LLC ("**Leyline**") pursuant to a Pledge Agreement dated April 23, 2021.  The Leyline security interest was resolved at the time of the First Closing pursuant to the settlement embodied in the Sale Order.  In connection with the First Closing, Leyline released its security interest in the Class B Membership Interest.  The third priority lien is the tax lien of the United States of America, which arose pursuant to a notice of tax lien dated November 2, 2022.

---

2 The Debtors have requested an updated loan balance from Amalgamated.

According to the proof of claim filed by the IRS, the amount of its secured claim is $609,998.99. No determination has been made whether the IRS' claim is secured within the meaning of section 506(a) of the Bankruptcy Code, and the Debtor reserves its rights with respect to such issue.

14.    When it became apparent that the Class B Membership Interest would become an Excluded Asset, the Debtor commenced planning for its sale or other disposition. The Debtor's financial advisor performed a preliminary assessment of the Class B Membership Interest and determined that the interest has sufficient value to justify a second sale process. Accordingly, SaveSolar is seeking to sell the Class B Membership Interest and reserves the right to propose bid procedures or seek related relief at the appropriate time.

15.    The Debtors' first sale process was led by Jeffrey R. Manning, Sr., who was then a Managing Director of CRC. Mr. Manning has since departed CRC and formed SBG. For the purposes of this engagement, SBG will work with BA, a FINRA/SEC registered broker/dealer. In addition to founding SBG, Manning is a registered representative of BA. The terms of SBG's and BA's proposed employment are embodied in the Engagement Letter attached to the Manning Declaration (the "**Engagement Letter**") and summarized in this Application.

## PROFESSIONAL QUALIFICATIONS

15.    The Debtor seeks to retain SBG and BA as its investment bankers because of Mr. Manning's extensive experience in investment banking and familiarity with the Debtor. Mr. Manning is the founder and Senior Managing Director of SBG and a Registered Representative of BA. He has more than 40 years of experience in the corporate recovery marketplace and has been involved in investment banking, loan workout, operating restructuring, value investing, bankruptcy advising and loan trading. Mr. Manning earned his MBA from Columbia University

and his BA from Yale University.  By virtue of his leadership of the initial sale process in this case, Mr. Manning is familiar with the Debtors and their assets, including the Class B Membership Interest.

16.     The services to be rendered by SBG and/or BA are necessary and essential to the Debtor's obligations and will not duplicate the services to be rendered by any other professional in these cases.

<u>**SERVICES TO BE PROVIDED**</u>

17.     SBG and/or BA will, in connection with these chapter 11 cases and subject to orders of this Court, provide the following services:

i.      Review the Debtor's business, markets, results of operations, financial condition and prospects related to the Class B Membership Interest;

ii.     Prepare with the Debtor materials to solicit interest from potential Investors and Lenders.  Marketing materials (together, the "Documents") may describe the Debtor's business, markets, management, results of operations, financial condition, prospects and competition;

iii.    Direct and coordinate the due diligence process, including, without limitation, the coordination of confidentiality agreements and access to a data room;

iv.     Manage the marketing process by providing the first response to initial due diligence questions, coordinating requests for additional information and scheduling meetings between the Debtor and interested Investors and Lenders;

v.      Solicit indications of interest and assist the Debtor in evaluating and comparing offers to acquire the Class B Membership Interest;

vi.    Assist the Debtor and its advisors through the closing process; and

vii.    Advise the Debtor, other professionals, and counsel on other matters that may arrive from time to time during the engagement.

18.    The Debtor believes that SBG and BA possess the requisite resources and are highly qualified and uniquely able to assist the Debtor with the sale of the Class B Membership Interest.

19.    The Debtor believes that neither SBG nor BA represents nor holds any interest adverse to the estate in the matter in which they are to be engaged.

20.    The Debtor believes that SBG and BA should be employed and compensated at the rates reflected in the Manning Declaration filed as an exhibit to this Application, which is incorporated by reference herein.  The fee structure for SBG's services is contingent on the consummation of a Transaction, either through a restructuring or a sale of assets.  Any award of fees will be governed by Section 328 of the Bankruptcy Code.  All charges for fees and expenses are subject to review by the Court, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court.

## DISINTERESTEDNESS OF PROFESSIONALS

21.    SBG and BA have reviewed their electronic databases to determine whether they have any relationships with any creditors and parties in interest in these chapter 11 cases, the list of which was provided by the Debtor and/or its representatives.  To the best of the Debtor's knowledge, information and belief, and except as disclosed in the Manning Declaration, SBG and BA are "disinterested persons," as such term in defined in the Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b) and as required by Bankruptcy Code

8

section 327(a), and do not hold or represent an interest materially adverse to the Debtor, its estate, creditors, and equity security holders.

22.    SBG and BA are "disinterested persons," defined as a person that

    a)    is not a creditor, an equity security holder, or an insider;

    b)    is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtors; and

    c)    does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtors, or for any other reason.

*See* 11 U.S.C. § 101(14).

23.    The Debtor has been advised that, except as set forth in the Manning Declaration, SBG and BA are not aware of representing any other entity in connection with these or their respective attorneys and accountants, the United States Trustee or any other person employed in the Office of the United States Trustee in any matter relating to the Debtor or its estate. To the extent that any new relevant facts or relationships bearing on the matters described herein are discovered or arise during the period of SBG's and BA's retention, SBG and/or BA, as applicable, will use reasonable efforts to promptly file a supplement Manning Declaration if and when necessary to disclose any further relationships that require disclosure in these chapter 11 cases and as required by Bankruptcy Rule 2014(a).

24.    The Debtor is aware that, SBG and/or BA may represent, may have represented, or may have connections to certain creditors of the Debtor's estate or other parties-in-interest in matters unrelated to the Debtor or these Chapter 11 cases. Any such representations and connections are disclosed in the Manning Declaration out of an abundance of caution.

25.     The Debtor is satisfied that neither SBG nor BA does not represent an interest adverse to the Debtor with respect to the matters for which they will be employed. To the best of the Debtor's knowledge and except as set forth therein and in the attached Manning Declaration, neither SBG nor BA has any interest in or connection with any creditor or other party-in-interest in the Debtors' pending Chapter 11 proceedings. Neither SBG nor BA holds any interest adverse to the interests of the Debtor in the matters for which they are proposed to be employed. The employment of SBG and BA would be in the best interest of the Debtor and Debtor's estate.

## PROFESSIONAL COMPENSATION

21.     For the services rendered in connection with this engagement, and subject to approval of this Court, the Debtor has agreed to compensate SBG and BA as follows:

i.   _Retainer_: The Debtor agrees to pay the Advisor a retainer fee of $10,000 upon execution of the engagement agreement, payable as soon as practical upon an invoice from SBG and/or BA.  All fees and expense reimbursement are subject to subsequent Bankruptcy Court review and approval.

ii.  _Transaction Fee_: Upon and as a condition of the closing of a Transaction (as defined in the Engagement Letter), the Debtor also will pay to SBG and/or BA a contingent transaction fee equal to 3.5% of the Total Consideration (as defined in the Engagement Letter). Any Transaction Fee is contingent upon the consummation of a Transaction.

iii. _Restructuring Fee_: In the event the Transaction involves restructuring around the Class B Membership Interest in lieu of a sale of the asset, the Debtor shall pay SBG and/or BA the greater of a transaction fee of $100,000 or 3.5% of committed capital, payable upon the confirmation of the plan of reorganization.

22.    The compensation discussed herein reflects the aggregate compensation. Pursuant to the agreements between SBG and BA, fees relating to these investment banking activities will be paid to BA, where Manning is a Registered Representative.

23.    The compensation is consistent with the terms that the Court previously approved in favor of CRC.    Most significantly, the commission is identical: 3.5%.    Further, the commission is not duplicative of compensation approved and paid to CRC.    CRC completed its engagement and was compensated pursuant to its final fee application based on funds received from the sale of assets to ERB.    *See Order Approving First And Final Application Of CohnReznick Capital Markets Securities, LLC For Allowance Of Compensation And Reimbursement Of Expenses*, entered October 4, 2023 (clerk's docket no. 272).    The commission payable to SBG and/or BA will be payable from proceeds of the sale or restructuring with respect to a sale of the Class B Membership Interest.

24.    SBG understands that any compensation paid to SBG and/or BA must be approved by this Court upon application consistent with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, or further Order of this Court.    In addition, SBG will also seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement in these chapter 11 cases, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, computer assisted legal research, photocopying, train fare, meals and lodging. Expenses for actual costs incurred will be charged in accordance with the applicable Rules and Guidelines of this Court.

25.    Consistent this the practice of investment bankers, SBG and BA will maintain detailed, contemporaneous time records in quarter of an hour and apply to the Court for the allowance of compensation for professional services and reimbursement of expense in

accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any additional procedures that may be established by the Court in this chapter 11 case.

## BASIS FOR RELIEF

26.     The Debtor seeks to retain SBG and BA to serve as investment bankers for the Debtor on a contingent fee basis pursuant to Bankruptcy Code section 328.

27.     The Debtor submits that, for all the reasons stated above and in the Manning Declaration, the retention of SBG and BA to serve as investment banker for the Debtor is warranted.  Not granting the relief requested herein would deprive the Debtor of the assistance of a highly qualified provider of investment banking services to the detriment of the Debtor, its creditors and all other parties in interest.

## BASIS FOR RELIEF

28.     Notice of this Application has been provided either by facsimile, electronic transmission, or first-class mail to all parties listed on the Master Service List prepared and maintained in accordance with Article VI of the Court's Complex Case Procedures. The Debtor submits that, given the nature of the relief requested, no further or other notice is necessary.

## NO PRIOR REQUEST

29.     No prior application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests entry of the Order, substantially in the form annexed hereto as Exhibit "A", granting the relief in this Application and such further relief as is just, proper and equitable.

Dated: February 6, 2024                    Respectfully submitted,

                                           */s/ Bradford F. Englander*
                                           Bradford F. Englander (Bar No. 428617)
                                           Alexandra G. DeSimone (admitted *pro hac vice*)
                                           **WHITEFORD, TAYLOR & PRESTON L.L.P.**
                                           3190 Fairview Park Drive, Suite 800
                                           Falls Church, Virginia 22042-4510
                                           Telephone:     (703) 280-9081
                                           E-Mail:        benglander@whitefordlaw.com
                                                          adesimone@whitefordlaw.com

                                           *Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, I caused a copy of the foregoing Application to be served *via* CM/ECF upon all parties receiving notice thereby and by first-class mail or e-mail, where an e-mail address was available, on all persons on the Master Service List established pursuant to Article VI of the Court's Complex Case Procedures.

                                           */s/ Alexandra G. DeSimone*
                                           Alexandra G. DeSimone
                                           Counsel

### Exhibit A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 23-00045-ELG |
| | ) | |
| SAVESOLAR CORPORATION, INC., *et al.*[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER APPROVING APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN
SILVER BIRCH, INC. AND BA SERCURITES, LLC AS INVESTMENT BANKERS
FOR SAVESOLAR CORPORATION, INC. EFFECTIVE AS OF JANUARY 26, 2024**

Upon consideration of the application (the "**Application**")[2] to approve the employment

of Silver Birch, Inc. ("**SBG**") and BA Securities, LLC ("**BA**") as investment bankers to the

SaveSolar Corporation, Inc. ("**SaveSolar**" or the "**Debtor**"), effective January 26, 2024, and

---

[1]     The Debtors in these jointly administered Chapter 11 Cases, along with the last four
digits of each Debtor's federal tax identification number, and its chapter 11 case number, are:
SaveSolar Corporation, Inc. (1304), Case No. 23-00045-ELG; SaveSolar Alpha HoldCo, LLC
(7389), Case No. 23-00046-ELG (the "**Initial Debtors**"); and SSC 1110 Kennebec MD, LLC,
(9270), Case No. 23-00140-ELG; SSC 3233 Fifteenth DC, LLC (9145), Case No. 23-00141-
ELG; SSC 1901 Brooks MD, LLC (0798), Case No. 23-00142; SSC 1323 I DC, LLC (5574),
Case No. 23-00143-ELG; SSC 1321 Fifth DC, LLC (4090), Case No. 23-00144-ELG; SSC 1321
Fifth Canopy DC, LLC (3796), Case No. 23-00145-ELG; SSC 116 Irvington DC, LLC (3472),
Case No. 23-00146-ELG; SSC 116 Irvington DC Canopy, LLC (6191), Case No. 23-00147-
ELG; SSC 2501 N DC, LLC (6769), Case No. 23-00148-ELG; and SSC 3320 Wheeler DC, LLC
(9082), Case No. 23-00149-ELG (the "**Affiliate Debtors**"). The Initial Debtors and the Affiliate
Debtors are referred to collectively herein as the "**Debtors**").

upon consideration of the Declaration of Jeffrey R. Manning, Sr. (the "**Manning Declaration**")

in support of the Application; and the Court having jurisdiction over this matter pursuant to 28

U.S.C. §§157 and 1334; and consideration of the Application and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and proper notice of the Application

having been provided to the necessary parties, and the Court having found that no other or

further notice is necessary; and the Debtor being authorized under Bankruptcy Code section 327,

328 and 330, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1 to retain and

employ, with the Court's approval, certain professional persons; and the Court having reviewed

the Application and the Manning Declaration and having heard statements in support of the relief

requested therein at any hearing held before the Court to consider the Application (the

"**Hearing**"); and the Court having found based on the representations made in the Application

and at the Hearing that SBG and BA are each a "disinterested person," as the term is defined in

Bankruptcy Code section 101(14) and as required by Bankruptcy Code section 327(a) and that

neither SBG nor BA holds or represents an interest adverse to the Debtor or its estate; and the

Court having found that the terms and conditions of the proposed employment as set forth in and

as summarized in the Application are reasonable as required by Bankruptcy Code section 328(a);

and the Court having determined that the legal and factual bases set forth in the Application and

at the Hearing establish just cause for the relief granted herein; and it appearing, and the Court

having found that the retention and employment of SBG and BA, which has the capability and

experience to provide the services described in the Application, is in the best interests of the

Debtor's estate, its creditors and other parties in interest; and any objections to the relief

---

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed

requested in the Application having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED**.

2.      The Debtor is authorized to retain and employ SBG and BA as its investment bankers effective as of January 26, 2024, in accordance with the terms and conditions set forth in the Application, except as limited or modified herein.

3.      SBG and BA are each authorized to provide the Debtor with the professional services as described in the Application.

4.      The Debtor is authorized to pay $10,000.00 retainer to SBG.  Payment may be made from the trust account that Debtor's counsel, Whiteford Taylor & Preston, LLP, is holding on account of the Debtor pursuant to this Court's *Order Authorizing The Debtors To (I) Close Their Existing Bank Accounts; (II) Deposit Remaining Fund In Attorney Trust Account; And (III) Authorize Disbursements For The Payment Of Ordinary Expen*ses, entered October 4, 2023 (clerk's docket no. 274).

5.      SBG and BA shall be entitled to compensation pursuant to section 328 of the Bankruptcy Code on a contingent fee basis, and to reimbursement of expenses, all in the amounts, and subject to the terms, conditions, and procedures set forth in the Application, except as expressly modified by this Order.  Notwithstanding any provision to the contrary herein, the U.S. Trustee shall have the right to object to SBG's and/or BA's request(s) for interim and final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code, and in such circumstances, the Court retains

to them in the Application.

3

the right to review the interim and final applications pursuant to section 330 of the Bankruptcy Code.  In determining reasonableness, the Court shall rely on compensation standards applicable to investment bankers.

6.      Neither SBG nor BA shall be entitled to reimbursement for fees and expenses of its counsel incurred in connection with any objection to its fees or negotiation of the terms of the engagement, to the extent prohibited by *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121 (2015), or other governing caselaw.  In the event that, during the pendency of these cases, SBG and/or BA seeks reimbursement for any attorney's fees or expenses, the invoices and supporting time records from such attorneys shall be included in such professional's fee applications and such invoices and time records shall be in compliance with the Local Bankruptcy Rules and shall be subject to any U.S. Trustee Guidelines and approval of the Bankruptcy Court under the standard of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327; *provided, however*, that neither SBG nor BA shall not seek reimbursement from the Debtor's estate for any fees incurred in defending any of such professional's fee applications or negotiations of the engagement in these chapter 11 cases, to the extent prohibited by *Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121 (2015), or other governing caselaw.  Nothing herein shall affect SBG's or BA's rights with respect to fee or costs as may be subject to the indemnification provisions in the Engagement Letter.

7.      SBG and BA each is hereby authorized to keep reasonably detailed time records in one-quarter (.25) hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered and will identify each professional rendering services, the category of services rendered, and the amount of compensation requested. SBG and BA, as investment banker, each shall be excused

4

from keeping time in tenth-hour increments and shall not be required to provide or conform to any schedules of hourly rates.

8.      Notwithstanding anything to the contrary in the Engagement Letter or the Application, to the extent that the Debtor requests SBG and/or BA to perform any services other than those detailed in the Engagement Letter, the Debtor shall seek further approval by the Court by an application that shall set forth the additional services to be performed and the additional fees sought to be paid.

9.      The Debtor, SBG and BA are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

10.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

11.     To the extent there is any inconsistency between the terms of the Application and this order, the terms of this Order shall govern.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any stay as may be applicable under Federal Rule of Bankruptcy Procedure 6004(h) is hereby waived.

13.     Notwithstanding anything in the Application to the contrary, during the pendency of these Chapter 11 Cases, the Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.

**END OF ORDER**

I ASK FOR THIS:

*/s/ Bradford F. Englander*
Bradford F. Englander (Bar No. 428617)
Alexandra G. DeSimone (admitted *pro hac vice*)

**WHITEFORD, TAYLOR & PRESTON L.L.P.**
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042-4510
Telephone:      (703) 280-9081
E-Mail:         benglander@whitefordlaw.com
                adesimone@whitefordlaw.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit B

**Declaration of Jeffrey R. Manning, Sr. CTP**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SAVESOLAR CORPORATION, INC., *et al*[1] | ) |  |
|  | ) | Case No.: 23-00045-ELG |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### DECLARATION OF JEFFREY R. MANNING, SR. IN SUPPORT OF APPLICATION AUTHORIZING THE RETENTION & EMPLOYMENT OF SILVER BIRCH, INC. AND BA SERCURITES, LLC AS INVESTMENT BANKERS FOR SAVESOLAR CORPORATION, INC. EFFECTIVE JANUARY 26, 2024

I, Jeffrey R. Manning, CTP declare the following under penalty of perjury:

1.     I am the founder and Senior Managing Director of Silver Birch, Inc. ("SBG") and a Registered Representative of BA Securities, LLC ("BA" and together with SBG, the "Advisor").  I am duly authorized to make this declaration (the "Declaration") on behalf of both SBG and BA.  The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify competently thereto.

---

[1]     The Debtors in these jointly administered Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, and its chapter 11 case number, are: SaveSolar Corporation, Inc. (1304), Case No. 23-00045-ELG; SaveSolar Alpha HoldCo, LLC (7389), Case No. 23-00046-ELG (the "**Initial Debtors**"); and SSC 1110 Kennebec MD, LLC, (9270), Case No. 23-00140-ELG; SSC 3233 Fifteenth DC, LLC (9145), Case No. 23-00141-ELG; SSC 1901 Brooks MD, LLC (0798), Case No. 23-00142; SSC 1323 I DC, LLC (5574), Case No. 23-00143-ELG; SSC 1321 Fifth DC, LLC (4090), Case No. 23-00144-ELG; SSC 1321 Fifth Canopy DC, LLC (3796), Case No. 23-00145-ELG; SSC 116 Irvington DC, LLC (3472), Case No. 23-00146-ELG; SSC 116 Irvington DC Canopy, LLC (6191), Case No. 23-00147-ELG; SSC 2501 N DC, LLC (6769), Case No. 23-00148-ELG; and SSC 3320 Wheeler DC, LLC (9082), Case No. 23-00149-ELG (the "**Affiliate Debtors**"). The Initial Debtors and the Affiliate Debtors are referred to collectively herein as the "**Debtors**").

2.      This Declaration is submitted in support of the application (the "Application") to retain and employ SBG and BAS, together, as the exclusive Advisor and investment banker to SaveSolar Corporation, Inc., effective as of January 26, 2024, for the entry of an order, pursuant to sections 327(a), 328 and 1107 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and to provide the disclosures required under section 327 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

3.      **Services to be Provided.**  In connection with the above-captioned chapter 11 case, SaveSolar Corporation, Inc. ("SaveSolar" or the "Debtor") has requested authorization to retain SBG and BA as its investment bankers.  Summarizing key items from the Engagement Letter dated January 26, 2024 attached hereto as Exhibit 1, the Advisor provide investment banking services including:

    i.      Review the Debtor's business, markets, results of operations, financial condition and prospects related to the Class B Membership Interest;

    ii.     Prepare with the Debtor materials to solicit interest from potential Investors and Lenders.  Marketing materials (together, the "Documents") may describe the Debtor's business, markets, management, results of operations, financial condition, prospects and competition;

    iii.    Direct and coordinate the due diligence process, including, without limitation, the coordination of confidentiality agreements and access to a data room;

    iv.     Manage the marketing process by providing the first response to initial due diligence questions, coordinating requests for additional information and scheduling meetings between the Debtor and interested Investors and Lenders;

v.      Solicit indications of interest and assist the Debtor in evaluating and comparing offers to acquire the Class B Membership Interest;

vi.     Assist the Debtor and its advisors through the closing process; and

vii.    Advise the Debtor, other professionals, and counsel on other matters that may arrive from time to time during the engagement.

4.      **Compensation Fees and Expenses**. For the services rendered in connection with this Agreement, the Debtors will pay to the Advisor all fees, compensation and reimbursement of expenses as follows:

i.      _Retainer_:  The Debtor agrees to pay the Advisor a retainer fee ("Retainer Fee") in the amount of $10,000 upon execution of the Engagement Letter, payable as soon as practical upon an invoice from Advisor. All fees and expense reimbursement are subject to Bankruptcy Court review and approval.

ii.     _Transaction Fee_:  Upon and as a condition of the closing of a Transaction (as defined in the Engagement Letter), the Debtor also will pay the Advisor a contingent transaction fee ("Transaction Fee") equal to 3.5% of the Total Consideration (as defined in the Engagement Letter). Any Transaction Fee is contingent upon the consummation of a Transaction.

iii.    _Restructuring Fee_: in the event the Transaction involves restructuring around the Class B Membership Interest in lieu of a sale of the assets, the Debtor shall pay the Advisor the greater of a Transaction Fee of $100,000 or 3.5% of committed capital, payable upon the confirmation of the plan of reorganization.

iv.     _Expenses_:  Subject to court review and approval, the Debtor agrees to reimburse Advisor for all reasonable out-of-pocket expenses incurred in connection with the services

rendered hereunder during the term of the Engagement Letter. These expenses include third-party charges for outside data bases and costs for the online data room.

5.      The Advisor understands that any compensation paid to the Advisor must be approved by this Court upon application consistent with the Bankruptcy Code, applicable Bankruptcy Rules or further Order of this Court.  In addition, the Advisor will also seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement in this chapter 11 case, which may include, but are not limited to, postage, overnight mail, courier delivery, transportation, computer assisted legal research, photocopying, train fare, meals and lodging. Expenses for actual costs incurred will be charged in accordance with the applicable Rules and Guidelines of this Court.

6.      The Advisor intends to maintain contemporaneous time records in keeping with investment banking protocol in quarter hour increments and to apply to the Court for the allowance of compensation for professional services and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any additional procedures that may be established by the Court in this chapter 11 case.  The Advisor has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim fee and final fee awards are subject to approval by this Court.

7.      The Advisor intends to make reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the UST Guidelines in connection with the Application and any interim and final fee applications to be filed in these cases.  The disclosures made herein are based exclusively on the facts and circumstances of the Chapter 11 Cases and the Advisor reserves the right to object to such requirements, or any other

requirements contained in the UST Guidelines in future cases should it determine that it is appropriate to do so.

8.      **SBG and BA's Disinterestedness.**   In connection with its proposed retention by the Debtor in this chapter 11 case, SBG and BA each undertook a conflicts analysis process to determine whether it had any conflicts or other relationships that might cause it to hold or represent an interest adverse to the Debtor or might cause it to not be disinterested. Specifically, SBG and BA obtained from the Debtor and/or its representatives the names of individuals and entities that may be parties-in-interest in this chapter 11 case (the "Potential Parties in Interest"). The Potential Parties in Interest are listed on Schedule 1 attached hereto. Each Advisor's review, completed under my supervision, consisted of a query of those parties within an internal computer database containing names of individuals and entities that are present or former clients of SBG and BA. Only individuals and entities that are party to active matters are considered in determining conflicts. In addition, an email is sent to SBG's and BA's professionals inquiring of any potential connections with the Potential Parties in Interest.

9.      If additional potential parties in interest are reasonably made known to SBG and/or BA, they will review their connections with such parties and supplement this Declaration if additional information requiring disclosure is discovered.

10.     The results of SBG's and BA's inquiry into the Potential Parties in Interest (or any of their known or apparent affiliates) are listed on Schedule 2 annexed hereto. To the extent that either SBG and/or BA discovers or enters into any new, material relationship with Potential Parties in Interest, it will supplement this Declaration. To the best of my knowledge and belief, neither SBG nor BA has represented any Potential Parties in Interest in connection with matters relating to the Debtor, its estates, assets or business and will not represent other entities which

are creditors of, or have other relationships to, the Debtor in matters relating to these Chapter 11 cases.

11.    SBG, BA, and their affiliates provide investment banking support services in many areas, including but not limited to identifying opportunities for a recapitalization or a sale of the assets of the many companies. As part of its diverse practice, SBG and BA may appear in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of whom may represent claimants and parties-in-interest in the Debtors' Chapter 11 cases. Also, SBG and BA have performed in the past, and may perform in the future, investment banking services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, SBG and BA have in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtors or these Chapter 11 cases. Likewise, certain such professionals who are retained in these Chapter 11 cases might have referred work to SBG and/or BA. Based on my current knowledge of the professionals involved, and to the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these relationships constitute interests adverse to the Debtor in matters upon which SBG and BA are to be employed, and none are in connection with this case.

12.    From time to time, SBG and/or BA may have provided services, and SBG and/or BA currently and likely in the future will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these Chapter 11 cases. As described herein, however, SBG and BA have undertaken a detailed search to determine, and to disclose, whether it either is providing or has provided services to any

13

significant creditor, equity security holder, insider or other Potential Parties in Interest in such unrelated matters.

13.     Insofar as I have been able to ascertain through diligent inquiry, except as set forth below, neither I, SBG, BA nor any principal or professional employee of SBG or BA have any connection with the Debtor, its creditors, any other party-in-interest, their current respective attorneys or professionals, the United States Trustee or any person employed in the office of the United States Trustee, nor do we hold or represent any entity having, an adverse interest in connection with the Debtor's chapter 11 case.

14.     Neither I, SBG, BA nor any professional employee of SBG or BA is related professionally to the Debtor, its creditors or any other party in interest herein or their respective attorneys in the matter for which SBG and BA are proposed to be retained.

15.     To the best of my knowledge, neither SBG nor BA has been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, these cases. If this Court approves the proposed employment of SBG and BA as Advisor and investment banker to the Debtor, they will not accept any engagement or perform any services in the cases for any entity or person other than the Debtor. SBG and/or BA may, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties-in-interest in the cases; provided, however, that such services do not and will not relate to, or have any direct connection with, these cases.

16.     I understand there is a continuing duty to disclose any adverse interest and change of disinterestedness.

17.    I understand that the Court's approval of the application is not approval of any proposed terms of compensation and under § 328(a), the Court may allow compensation on terms different from those proposed.

18.    No promises have been received by SBG and/or BA, or by an employee thereof, as to compensation in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code.

19.    The Advisor states pursuant to Rule 2016(b) of the Federal Rules of Bankruptcy Procedures that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than between SBG and BA, with the principals of SBG and/or BA, or (b) any compensation another person or party has received or may receive.

20.    I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and the Advisor will comply with them, subject to the Orders of this Court.

21.    I am not aware of anyone who objects to the Advisor's employment.

22.    I shall amend this statement immediately upon my learning that (a) any of the within representations are incorrect or (b) there is any change of circumstances relating thereto.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Arnold, Maryland
February 6, 2024


                                        */s/ Jeffrey R. Manning_____*
                                        Jeffrey R. Manning, Sr. CTP

15

## SCHEDULE 1

**Accountants**
Marcum LLP

**Accounts Payable Vendors**
Alvarez & Marsal Valuation Services
Antonia Zuluaga
Bennett Hanson
BRENDOCORP PTY LTD
Cardenas, Omar
CareFirst
Carlos Eduardo Huepa Bolivar
Carolina Londono
Carolina Sosa
Celis Hoyos
Clean Energy Counsel LLP-1
Cleantech Law Partners
CohnReznick LLP
Cox, Thomas J
Cristian Andres Ahumedo Gonzalez
David Angarita García
DC Health Link
Demuren, Tumi
Elkin Andrés Pardo Durán
EnergySage
Enertis Inc
Erika Carolina Londoño Sosa
Goldstein, Samuel F.
Gunter & King Pty Ltd (PANDR)
Halo Development LLC
ICAP Energy LLC
Intact Services USA LLC
Julian Celis Hoyos
Logistics Plus, Inc
Lumina Solar Inc
Maria Antonia Rincón Zuluaga
Maria Rincon
Metropolitan Exteriors Inc
Miguel Angel Santana Hernandez
N.J. Division of Consumer Affairs
Pannell House Condominium Assocation, Inc.
Partner Helper LLC
PEPCO

RB Hinkle Construction Inc
RER Energy Group LLC
Sarkar, Sayan
The Premium Finance Company, LLC
TRAVELERS
Zooz Technology
Adobe
Aircall
Alejandro Toro Perdomo
Atlassian
AWS services
Bill.com
Business Central
Captain Power LLC
CHESSA
Citrix
Clean Edge
Dropbox
Formstack
Grappler Construction
G-suite
Helioscope
Hubspot
Industrious
Kutler Tax Resolution, Inc.
Lucid Chart
Nearmap
Notarize.com
Office 365
Omar Enrique Cardenas Velasquez
PaperTrl, Inc
PJM EIS
Pondeca Industries Incorporated
ProTitleUSA
Quickbooks
Realtimeboard, Inc. dba Miro
Slack
Smartsheet
Solarview.IO Renewable Energy Ltd
UXPin
Vinay Jain
William Wilson
Zapier
ZOOMINFO

**<u>Contract/lease parties</u>**

Benning Park Neighborhood Corporation
Berkeley Point Capital LLC dba Newmark
Bishop's Gate Condominium
BP Energy Company
Brooks Oak Hill Properties
Community Renewable Energy Facility (CREF)
District of Columbia Sustainable Energy Utility (DCSEU)
E & G DC Co-Op Owner LLC
Elesa Vetgrad Cemetery
Charles G. Meyers
Fannie Mae
Fox Hills North Ltd Partnership
Grady Management
Grady Properties IV FC Limited Partnership
Grappler Construction
Green Power Connection
Metropolitan Exteriors
Oak Park Phase II Limited Partnership
Prime Partners Engineering
Second NW Cooperative HME
Solar Energy Services, Inc.
SolarGaines LLC
Standard RH Venture LP
aka Standard Property Company
Universal Renewables LLC
Vermont Energy Investment Corporation (VECI)
Wylie Court Condo

**Customers**
1441 Rhode Island Condominium Association
2224 Savannah DC
CATHEDRAL WEST
KAYE STERN
New Columbia Solar
VALOR DEVELOPMENT - FIREHOUSE 27
Vermont Energy Investment Corporation
We Solar Inc.
Woodberry Apartments LP

**Debtor subsidiaries and affiliates**
4601 N Park DC, LLC
Project Alpha TE JV
SA TEC, LLC
SaveSolar Alpha Holdco
SaveSolar Corporation
SaveSolar Subscriber Services LLC
SSC 1110 KENNEBEC MD, LLC

3

SSC 116 IRVINGTON CANOPY DC LLC
SSC 116 IRVINGTON DC LLC
SSC 1309 Fifth DC, LLC
SSC 1321 FIFTH CANOPY DC LLC
SSC 1321 FIFTH DC LLC
SSC 1323 I DC LLC
SSC 1350 E DC, LLC
SSC 1402 TWENTY SECOND DC LLC
SSC 1420 R DC, LLC
SSC 1430 Belmont DC, LLC
SSC 1441 RHODE ISLAND DC
SSC 1601 Gainseville DC, LLC
SSC 1715 FIFTEENTH DC LLC
SSC 1800 4th St DC, LLC
SSC 1811 Cabin Branch MD, LLC
SSC 1901 BROOKS MD LLC
SSC 1920 NAYLOR DC
SSC 220 Hamilton DC, LLC
SSC 2501 N DC LLC
SSC 2801 Stanton DC, LLC
SSC 2850 New York DC, LLC
SSC 3040 STANTON DC, LLC
SSC 3200 Curtis DC, LLC
SSC 3233 FIFTEENTH DC, LLC
SSC 3320 WHEELER DC
SSC 3553 EAST CAPITOL, LLC
SSC 4100 Suitland MD, LLC
SSC 4100 SUITLAND RD CANOPY, LLC
SSC 4101 Kaywood PL MD, LLC
SSC 4717 1st ST DC, LLC
SSC 5113 FITCH DC
SSC 600 Kenilworth DC, LLC
SSC 6304 Sherriff MD, LLC
SSC 6323 LUZON DC, LLC
SSC SR JV Holdco
Santa Bella Investments
SolRidge RE, LLC
SolRidge, LLC

**<u>Employees/Contractors</u>**
Bronson Bast
Carlos Bolivar
Carlos Huepa Bolivar
Cristian Ahumedo
David Angarita
Erika Londoño

Gomez, Catalina
Hegbe, Elie
Houghton, Kyle
Jacobs, Brendon
Juan Barragan
Juan Pablo Rojas Barragan
Ocbina, Jessamine
Power, Chris
Quiobel, Nigel
Reforsado, Nick Karl
Ro Nierre
Rodriguez, Julian David
Sam Goldstein
Thomas Cox
Toro, Alejandro
Unterlechner, Karl
Yoffee, Elicia

**<u>Lenders</u>**
Amalgamated Bank
Leyline Renewable Capital, LLC
LRC SaveSolar Investco LLC

**<u>Lien Creditors</u>**
Internal Revenue Service

## **SCHEDULE 2**

### **Connections with Parties-in-Interest**

SBG and BA have worked on wholly unrelated matters in the past, may currently work on wholly unrelated matters and may work on wholly unrelated matters in the future. No connections were found with parties-in-interest.





jrmanning@silvrbirch.com

<u>PERSONAL AND CONFIDENTIAL</u>

January 26, 2024

Mr. Karl Unterlechner, President
SaveSolar Corporation, Inc.
810 7th Street NE
Washington, DC 20002
United States

Dear Karl:

     We are pleased to present this letter agreement ("Agreement") to confirm our understanding of the basis upon the engagement (the "Engagement") of Silver Birch, Inc., a Delaware corporation ("SBG") and BA Securities, LLC, a Pennsylvania limited liability company ("BA") on an exclusive basis by SaveSolar Corporation, Inc. ("SaveSolar" or the "Debtor"), with respect to the possible restructuring around, or sale of, SaveSolar's membership interest (the "Membership Interest") in SSC SR JV HoldCo LLC ("JV HoldCo" or the "Class B Member"), (a "Transaction"). SBG and BA are individually and collectively referred to and defined herein as "Advisor," "we," or "us." SaveSolar is operating in the U.S. Bankruptcy Court in District of Columbia (Case No.: 23-00045-ELG). Any security services provided under this Agreement will be conducted by Financial Industry Regulatory Authority ("FINRA") licensed personnel.

Jeffrey R. Manning, Sr. CTP leads this engagement.[1]

In consideration of the mutual covenants and agreements herein contained, the parties hereto warrant and agree as follows:

### Section 1 – Duties & Services

As the Debtor's investment banker, we will, in coordination with the Debtor, as required or requested:

    i.  Review the business, markets, results of operations, financial condition and prospects of the Debtor and JV HoldCo;

    ii.  Prepare with the Debtor's and JV HoldCo's materials to solicit interest from potential Investors and Lenders. Marketing materials (together, the "Documents") may describe the

---

[1] BA Securities, LLC is a FINRA/SEC registered Broker/Dealer, and, in addition to founding SBG, Manning is a Registered Representative of BA.



jrmanning@silvrbirch.com

Debtor's  and JV HoldCo's business, markets, management, results of operations, financial condition, prospects and competition;

iii. Direct and coordinate the due diligence process, including, without limitation, the coordination of confidentiality agreements and access to a data room;

iv. Manage the marketing process by providing the first response to initial due diligence questions, coordinating requests for additional information and scheduling meetings between the Debtor, JV HoldCo and interested Investors and Lenders;

v. Solicit indications of interest and assist the Debtor in evaluating and comparing offers to invest, recapitalize or acquire the Debtor's intererest in JV HoldCo;

vi. Assist the Debtor and its advisors through the closing process; and

vii. Advise Debtor, other professionals, and counsel on other matters that may arrive from time to time during the Engagement.

## Section 2 – Debtors' Actions & Understandings

In connection with this Agreement and the Engagement, the Debtor:

i. Agrees to provide Advisor with all information and material regarding the Debtor and JV HoldCo as Advisor may reasonably request in connection with the performance of its obligations hereunder;

ii. Agrees during the term of this Agreement not to initiate any discussions regarding a Transaction, except through Advisor.

iii. Understands and agrees that in rendering its services hereunder, Advisor will be using and relying upon, without any independent investigation or verification thereof, all information furnished to Advisor by or on behalf of the Debtor, and on publicly available information, and Advisor will not be responsible for the accuracy or completeness of such information (included in the Documents or otherwise), and Advisor will not undertake to make an independent appraisal of the assets of the Debtor or JV HoldCo;

iv. Understands and agrees that in rendering its services hereunder, Advisor is not providing any accounting, legal or tax advice, and that Advisor will rely on other advisors to the Debtor on these matters;

v. Understands and agrees that SBG will not perform any services in connection with this Agreement that would require SBG to be registered as a FINRA/SEC registered Broker/Dealer. All such services will be performed by Jeffrey R. Manning, Sr. CTP, an associated person of BA;



jrmanning@silvrbirch.com

vi. Understands and agrees that Advisor shall use commercially reasonable efforts to facilitate the Transaction, but that this Agreement does not give rise to any express or implied assurance, commitment or guaranty of the closing of a Transaction;

vii. Understands and agrees that Advisor is being retained to serve as the investment banker and financial advisor solely to the Debtor, and that the engagement of Advisor is not, and shall not be deemed to be, on behalf of, and is not intended to confer rights or benefits upon, any shareholder or creditor of the Debtor or upon any other person or entity. The Advisor is an Independent Contractor and has no Fiduciary Relationship with the Debtor;

viii. Understands that BA maintains important disclosures on its web site at www.basecuritiesllc.com/disclosures. These disclosures, including BA's Privacy Policy, Business Continuity Plan and Customer Identification Plan, may be updated periodically on an as-needed basis. The Debtor agrees to accept and receive all of these disclosures by accessing BA's web site electronically and acknowledges that hard copies are available by contacting BA at info@basecuritiesllc.com; and

ix. Understands and agrees that in accordance with the requirements of the USA Patriot Act and Customer Due Diligence rules, that it is required to provide certain information to Advisor, which information may include the name, address, DOB, SSN and copies of official government-issued identification of applicable Debtor control persons and principal owners.

## Section 3 – Debtors' Representations & Warranties

In connection with this Agreement and the Engagement, the Debtor represents and warrants to Advisor that:

i. All information made available to Advisor by the Debtor or contained in the Documents will, at all times during the period of this engagement, to the best of the Debtor's actual knowledge after due investigation, be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made; and

ii. Any projections provided to Advisor or contained in the Documents will have been prepared by the Debtor in good faith and will be based upon reasonable assumptions derived from the best estimates and facts then available to the Debtor.



jrmanning@silvrbirch.com

## Section 4 – Fees and Expenses

For the services rendered in connection with this Agreement, the Debtor will pay to the Advisor all fees, compensation and reimbursement of expenses as follows:

i.  *Retainer*: The Debtor agrees to pay the Advisor a retainer fee ("Retainer Fee") as follows: (i) $10,000 upon execution of this Agreement, payable as soon as practical upon an invoice from Advisor. All Fees and expense reimbursement are subject to subsequent Bankruptcy Court review and approval.

ii. *Transaction Fee*: Upon and as a condition of the closing of a Transaction, the Debtor also will pay the Advisor a contingent transaction fee ("Transaction Fee") equal to 3.5% of the Total Consideration. Any Transaction Fee is contingent upon the consummation of a Transaction.

iii. *Restructuring Fee*: in the event the Transaction involves restructuring around the Class B Member Interest in lieu of a sale of the assets, the Debtor shall pay the Advisor the greater of a Transaction Fee of $100,000 or 3.5% of Committed Capital, payable upon the confirmation of the Plan of Reorganization. For the purposes of this engagement, "Committed Capital" shall mean all funds that have been provided to the Debtor, or unconditionally committed to the Debtor, by any person, and that are based on the financing of, or investment in, the Membership Interest.

iv. *Expenses*: Subject to court review and approval, the Debtor agrees to reimburse Advisor for all reasonable out-of-pocket expenses incurred in connection with the services rendered hereunder during the term of this Agreement. These expenses include third party charges for outside data bases and costs for the online data room. Advisor will consult with the Debtor and its professionals prior to incurring expenses that are expected to exceed $1,000 in the aggregate for any vendor.

## Section 5 – Confidentiality

Advisor will not disclose to a third party any confidential information made available to it by, or on behalf of, the Debtor or JV HoldCo and will use such confidential information only in connection with this Agreement; provided that such confidential information will not include any information: (i) already in Advisor's possession prior to the date the Debtor disclosed it to Advisor; (ii) that becomes generally available to the public without violation of this paragraph by Advisor or its representatives; or (iii) that becomes available to Advisor on a non-confidential basis from a third party not bound by a confidentiality obligation to the Debtors with respect to such information. Advisor is hereby expressly permitted by the Debtor to disclose confidential information to third parties involved in the Transaction contemplated herein, provided that the Debtor has been informed of such disclosure in advance and has approved such disclosure (either orally or in writing) and both the Debtor and Advisor agree that the



jrmanning@silvrbirch.com

provisions of this paragraph shall supersede those provisions contained in any confidentiality or non-disclosure agreements executed by the parties previous to the date of this Agreement.

The Debtor acknowledges that all opinions and advice (written or oral) given by Advisor to the Debtor in connection with this Agreement will be treated by the Debtor as confidential, are intended solely for the use of the Debtor in consideration of the Transaction and are not for the use of, and cannot be relied upon by, any other person or be used or relied upon for any other purpose.

## Section 6 - Term and Termination

Advisor's engagement shall be on an exclusive basis for a period of twelve (12) months from the date of acceptance of this Agreement by the parties and may be renewed thereafter upon mutual consent of the parties hereto.  Advisor's engagement hereunder may be terminated with or without cause by either the Debtor or Advisor at any time upon thirty (30) days written notice delivered to the other party.  In the event that a Transaction is consummated within one hundred eighty (180) days following the termination of this Agreement, and such Transaction has been procured by Advisor during the term of this Agreement, Advisor shall be entitled to all fees and expenses provided in Section 4 of this Agreement, subject to approval of the Bankruptcy Court.

Notwithstanding any expiration or termination of this Agreement, the provisions of Sections 5 through 11 hereof shall survive any assignment, expiration or termination of this Agreement.

In the event the Debtor proposes to close a Transaction, and the Debtor is not to be the surviving or resulting entity, the Debtor will make provision so that the Debtor's obligations hereunder are expressly assumed by the other party or parties to the Transaction.

## Section 7 - Advertising

The Debtor agrees that SBG, at its own expense, has the right to describe Advisor's services provided to the Debtor as contemplated in this Agreement after the closing of a Transaction through (i) the issuance of a press release, (ii) the placement of advertisements in financial and other newspapers and journals, and (iii) by reference in its marketing materials, including SBG's website.  Any such advertising is subject to the prior approval by the Debtor, which approval shall not be unreasonably withheld.

## Section 8 – Other Provisions

i.   *Expansion of Scope*. In the event the Debtor requires other services that are materially beyond the Duties and Services listed above, then the Advisor reserves the right to request additional compensation of terms mutually agreed by the parties. Absent exigent circumstances, expansion of scope that requires compensation other than as set forth herein must be agreed upon in advance and approved by the Bankruptcy Court.



jrmanning@silvrbirch.com

ii. _Communications with Debtors' Outside Counsel._ In the course of its engagement with the Debtor, the Advisor will assist the Debtor's counsel in its representation in connection with rendering legal services to the Debtor. In such event, any and all communications between outside counsel to which Advisor is also a party as a necessary component of outside counsel's ability to render legal services (together the "Privileged Communications"), shall be regarded as privileged and confidential and made solely for the purpose of assisting counsel in rendering legal services. It is expressly understood that the Privileged Communications are deemed to be subject to, and protected by, the attorney-client, attorney work product and/or other applicable rights and/or privileges.

iii. _Transaction._ For purposes of this Agreement, a "Transaction" shall mean and include, (i) investment or extension of capital from an Investor or Lender; (ii) any merger, consolidation, reorganization, recapitalization, business combination or other transaction pursuant to which the Debtor is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (including, without limitation, existing creditors, employees, affiliates, and/or shareholders); or (iii) the acquisition, directly or indirectly by a Purchaser (or one or more persons acting together with a Purchaser pursuant to a written agreement or otherwise), in a single transaction or a series of transactions, of (A) all of or any material portion of the assets or operations of the Debtors or (B) any outstanding or newly issued shares of the Debtors' capital stock (or securities convertible into, or options, warrants or other rights to acquire such capital stock).

iv. _Consideration._ For purposes of this agreement and for purposes of calculating a Transaction Fee, "Total Consideration" means the full transaction value of any Transaction comprising the sale or financing of the Membership Interest, and is defined as the sum of (i) all cash, notes, stock, other securities and other property of any type paid by an Investor or acquirer for the Membership Interest; (ii) all non-contingent debt, capitalized leases and similar obligations of the Debtor assumed, repaid or retired by the investor or acquirer (expressly excluding the Debtor's guaranty of the obligations of JV HoldCo to Amalgamated Bank); (iii) retention payments and amounts paid pursuant to non-compete and severance agreements; (iv) excess amounts paid for above-market employment and consulting agreements; and (v) the present value of any guaranty obligation to Amalgamated Bank that is assumed or retired as part of the Transaction. The present value of the Debtor's guaranty obligation to Amalgamate Bank shall be determined by the Bankruptcy Court in connection with the approval of the Transaction or allowance of the Advisor's fees. Notes, stock, other securities and other property will be valued at their cash or fair market value at the time of closing. Installment payments



jrmanning@silvrbirch.com

and other unconditional fixed payments (such as lease, license and management agreement payments) will be discounted to present value at the current the Secured Overnight Finance Rate (SOFR) at closing, as quoted by the Bloomberg.com. Contingent payments, such as performance-based earn-outs, retention bonuses and post-closing purchase price adjustments will not be included in Total Consideration until paid, at which time any additional Transaction Fee owed as a result of such additional payments will be paid to the Advisor.

v.   *Indemnification*. Subject to approval of the Bankruptcy Court, the Debtor agrees to indemnify and hold harmless the Advisor from and against all claims, direct damages, losses and actual out-of-pocket reasonable expenses, including court costs and reasonable attorneys' fees (collectively, a "Claim") and, at Advisor's option, will defend Advisor against any Claim, due to Advisor's provision of services under the agreement other than Claims arising from the Advisor's own gross negligence, bad faith, or willful misconduct. Subject to approval of the Bankruptcy Court, amounts owed by the Debtor hereunder shall be administrative expense claims under 11 U.S.C. § 503(b).

vi.  *Due Authorization*. Each of the parties hereto represents and warrants, each to the other, that this Agreement has been duly authorized by its representative governing body and, if required by law or agreement, its shareholders, partners or members; and that this Agreement constitutes a valid and enforceable obligation of each of the parties in accordance with its terms (subject to the approval of the Bankruptcy Court). The Agreement was negotiated by sophisticated parties at arm's length.

vii. *Governing Law*. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to conflicts of laws and principals thereof, and, to the extent it involves any United States statute, with the laws of the United States.

viii. *Dispute Resolution*. Operating as the debtor-in-possession in the U.S. Bankruptcy Courts in the District of Columbia, the parties recognize the Bankruptcy Court in the even of any disputes. The parties consent to the Bankruptcy Court hearing and determining all legal and factual disputes, and waive any requirement that the Bankruptcy Court submit a report and recommendation to the District Court.

ix.  *Headings*. The headings of the sections of this Agreement are used for convenience only and shall not affect the meaning or construction of the contents of this Agreement.



jrmanning@silvrbirch.com

## Section 9 - Notice

All notices provided under this Agreement shall be in writing (including email) and shall be considered effective (a) when delivered personally or by email (without notice of delivery failure or delay) to the party for whom intended, or (b) five days following: deposit of the same into the U.S. mail, prepaid and return receipt requested; addressed to the party at the address set forth below:

    i.      BA Securities LLC
    ii.     Four Tower Bridge, 200 Barr Harbor Drive, ste. 400
    iii.    W. Conshohocken, PA  19428
    iv.    Attn:      John Chuff, President
    v.     E-mail:    jchuff@basecuritiesllc.com

    i.      Silver Birch, Inc.
    ii.     1463a Grandview Road
    iii.    Arnold, MD  21012
    iv.    Attn:      Jeffrey R. Manning, Sr., Senior Managing Director
    v.     E-mail:    jrmanning@silvrbirch.com

    i.      Whiteford Taylor & Preston LLP (Debtor's Counsel)
    ii.     3190 Fairview Park Drive, Suite 800
    iii.    Falls Church, VA  22042
    iv.    Attn:      Bradford F. Englander
    v.     E-mail:    benglander@whitefordlaw.com

## Section 10 - Entire Agreement

This Agreement contains the entire understanding of the parties relating to the agreement set forth herein and transactions contemplated hereby, superseding all prior agreements, understandings and negotiations with respect thereto.  If any provision of this Agreement shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision of this Agreement, which shall remain in full force and effect.  This Agreement may be modified or amended only by a written instrument executed by the undersigned.

## Section 11 - Binding Effect; Assignment

This Agreement shall be binding upon the parties hereto and their respective heirs, administrators, successors, and assigns.  The engagement contemplated hereby and this Agreement is solely for the benefit of the Debtor, Advisor and the Indemnified Parties, and their respective successors, permitted assigns and representatives, and no other person or entity shall acquire or have any right under or by



jrmanning@silvrbirch.com

virtue hereof. This Agreement may not be assigned by either party without the prior written consent of the other party.

### *The Signature Page*

If the foregoing is acceptable to you, please so indicate by signing in the space provided and returning your signed copy to us. We look forward to working with you on this engagement and appreciate the opportunity to be of service.

Agreed to and accepted as of the date first above written:

**Silver Birch, Inc.**

By: _____

Jeffrey R. Manning, Sr.

Senior Managing Director

**SaveSolar Corporation, Inc.**

By: _____

Karl Unterlechner

President

**BA Securities, LLC**

By: *Daniel N. Pickens*

Daniel N. Pickens
Principal