Bradford F. Englander (Bar No. 428617)
Alexandra G. DeSimone (Bar No. VA184)
**WHITEFORD, TAYLOR & PRESTON L.L.P.**
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042-4510
Telephone:      (703) 280-9081
E-Mail:         benglander@whitefordlaw.com
                adesimone@whitefordlaw.com

*Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SAVESOLAR CORPORATION, INC., *et al.*[1] | ) | Case No. 23-00045-ELG |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER CLOSING
### JOINTLY ADMINISTERED CASES AND GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases move (this "**Motion**") for entry of an order substantially in the form attached hereto (the "**Proposed Order**"), pursuant to sections 105(a) and 350 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), closing the jointly administered chapter 11 bankruptcy cases filed by SaveSolar Corporation, Inc. ("**SaveSolar**") and SaveSolar Alpha HoldCo, LLC ("**Alpha HoldCo**" and together with SaveSolar, the "**Debtors**"). In support of this Motion, the Debtors respectfully represent as follows:

### Introduction

---

[1] The Debtors in these jointly administered Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, and its chapter 11 case number, are: SaveSolar Corporation, Inc. (1304), Case No. 23-00045-ELG; and SaveSolar Alpha HoldCo, LLC (7389), Case No. 23-00046-ELG.

1.  The Debtors, to the extent practicable, have fully administered their assets. By this Motion they seek authority to close this jointly administered case. In August 2023, the Debtors completed the sale of the majority of their assets and the assumption, assignment or rejection of a majority of their unexpired leases and executory contracts. Following the closing of the sale in 2023, the Debtors wound down the operations of the ten debtor subsidiaries, and obtained this Court's order closing the subsidiaries' chapter 11 cases. The purchaser of the Debtors' assets elected to forgo acquiring SaveSolar's interest in SSC SR JV Holdco LLC ("**JV Holdco**" or the "**Class B Membership Interest**"), the "Class B" member (and manager) of the tax equity joint venture, Project Alpha TE JV, LLC ("**Project Alpha**"), leaving the interest in JV Holdco as an asset of SaveSolar's bankruptcy estate. The Class B Membership interest is encumbered by the security interest of Amalgamated Bank and the tax lien of the Internal Revenue Service. The Debtors obtained preliminary information that the interest in JV Holdco had substantial value. In an effort to provide for a distribution to unsecured creditors, the Debtors engaged in an extensive marketing process for the sale of the Class B Membership Interest. At the end of this process, SaveSolar received a non-binding letter of intent for the purchase the Class B Membership Interest for $150,000. Unfortunately, the proposed purchase price was insufficient to cover the legal, accounting and investment banking fees required to consummate the sale. The Debtors' professionals tried vigorously to increase the sales price to an amount sufficient to provide a return to creditors in this case, but these efforts proved unsuccessful. Since the proposed sale provided no benefit to creditors of the estate, SaveSolar is not pursuing a sale free and clear of liens and security interests.

2.  Additionally, SaveSolar has an interest in litigation that was pending as of the petition date. That litigation, known as the "Moxie" case, arose from SaveSolar's payment of fees

to a contractor who elicited the payment without the ability or intent to perform contractually required services. Although SaveSolar obtained a default judgment against certain parties, and continues to press claims against certain other parties, the prospect of collection with respect to the Moxie litigation remains at best uncertain.

3.  The Debtors now seek to close this case to avoid further administrative expense. However, the Debtors seek to preserve the possibility that the Class B Membership Interest and the Moxie litigation may have some value, SaveSolar seeks to retain these two assets as part of its estate pursuant to Section 554(c) of the Bankruptcy Code, and to reserve the right to reopen the case under Section 350(b) in the event that circumstances change and value becomes available in an amount sufficient to provide for a distribution to creditors.

## Jurisdiction and Venue

4.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. To the extent that it may be determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, the Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion.

5.  Venue of the cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.  The statutory bases for the relief requested herein are sections 105(a), 350 and 554(c) of the Bankruptcy Code and Bankruptcy Rule 3022.

## Background

*A.   General Background*

8. On February 2, 2023 (the "**Petition Date**"), the Debtors each filed for bankruptcy under chapter 11 of the Bankruptcy Code.

9. Concurrently with the filing of its petition, SaveSolar filed Form 108, electing that the above-captioned cases be treated as a Complex Case under this Court's Complex Case Procedures. These cases are eligible for treatment under the Complex Case Procedures because the aggregate liabilities of all affiliated debtors total more than $10,000,000 and/or the total number of creditors is more than 50. *See* Complex Case Procedures I(a)(1) and I(a)(2).

10. The Debtors' cases are jointly administered pursuant to the *Order Directing Joint Administration* (Docket No. 39).

11. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

12. On May 31, 2023, SSC 132 Fifth DC, LLC; SSC 1323 I DC, LLC; SSC 3233 Fifteenth DC, LLC; SSC 1901 Brooks MD, LLC; SSC 2501 N DC, LLC; SSC 116 Irvington DC, LLC; SSC 1110 Kennebec MD, LLC; SSC 1321 Fifth Canopy DC, LLC; SSC 116 Irvington Canopy DC, LLC; and SSC 3320 Wheeler DC, LLC (collectively, the "**Affiliate Debtors**") each filed for bankruptcy under chapter 11 of the Bankruptcy Code. The Affiliate Debtors' cases were jointly administered with the Debtors' cases pursuant to the *Order Directing Joint Administration*. *See* Docket No. 157. The Affiliate Debtors' cases were closed on or about March 28, 2024. *See* Docket No. 389.

13. As of the date hereof, no trustee, examiner, or official committee has been appointed in these chapter 11 cases.

14. Additional information regarding the Debtors' business may be found in the *Declaration of Karl Unterlechner In Support of Debtors' First Day Motions*, filed on February 8,

4

2023 (Docket No. 24) (the "**First Day Declaration**").  The First Day Declaration includes the Debtors' organizational chart as Exhibit A thereto.2

*B.    The First Sale Process*

15.    On July 28, 2023, the Court entered the *Order (A) Approving Sale of Substantially All of Debtors' Property Free and Clear of Liens, Claims, Interests and Encumbrances; (B) Approving Amended Sales Contract; (C) Waiving Stays Under Bankruptcy Rule 6004; and (D) Granting Related Relief* (Docket No. 231) (the "**Sale Order**"), approving the sale of substantially all of the Debtors' assets to Edson Redball DevCo LLC, a Delaware limited liability (the "**Purchaser**"), pursuant to that certain Asset Purchase Agreement between the Debtors and the Purchaser (as amended, the "**Sales Contract**").

16.    On July 31, 2023, the Court entered the *Order Granting Debtors' Motion for Authority to Assume and Assign Executory Contracts and Unexpired Leases* (Docket No. 233), authorizing the Debtors to assume and assign the majority of their executory contracts and unexpired leases to the Purchaser in connection with the sale.

17.    The Sale Order included as Exhibit 1 the First Amendment to the Sales Contract (the "**First Amendment**"), providing, among other things, that the closing of the sale of substantially all of the Debtors' assets would occur in two phases. The first phase (the "**First Closing**") would cover the sale of all assets other than the Class B Membership Interest.  The second phase (the "**Second Closing**") would cover the sale of the Class B Membership Interest.

18.    As more fully set forth in the *Report of Sale of Property of the Estate* (Docket No. 248), the First Closing occurred on August 7, 2023, and the Debtors made substantial payments to

---

2    The Debtors request that the Court take judicial notice of the First Day Declaration and the Organizational Chart, in addition to other pleadings referenced in this Motion.

their first priority secured creditor (known as Leyline) and to a number of contract counterparties whose contracts were assumed and assigned. The Second Closing was scheduled to occur, if at all, on December 29, 2023.

19. Following the First Closing, the Debtors took certain steps to wind-down their business, including, among other things, terminating all of their U.S.-based employees.

20. On October 4, 2023, the Court entered the *Order Authorizing SaveSolar Corporation to Reject Executory Contracts and Unexpired Leases* (Docket No. 271), authorizing the Debtors to reject their remaining executory contracts, and the *Order Authorizing the Debtors to (I) Close Their Existing Bank Accounts; (II) Deposit Remaining Funds in Attorney Trust Account; and (III) Authorize Disbursements for the Payment of Ordinary Course Expenses* (Docket No. 274) (the "**Post-Closing Cash Management Order**"), authorizing the Debtors to safeguard their remaining liquid assets and reduce the administrative burden on the estate by closing their pre-petition and debtor-in-possession bank accounts and transferring their remaining funds to the IOLTA client trust account maintained by their counsel, Whiteford, Taylor & Preston, LLP ("**Whiteford**").

21. On December 28, 2023, the Debtors received payment of the final installment of the Purchase Price under the Sales Contract ($1,000,000), and on December 29, 2023, the Debtors paid $500,000 to LRC SaveSolar Investco LLC ("**Leyline**") pursuant to the Sale Order.

22. The Purchaser elected not to acquire the Class B Membership Interest, and consequently, the Second Closing did not occur by the deadline specified in the First Amendment. Per the terms of the First Amendment, the Class B Membership Interest became an Excluded Asset (as defined in the Sales Contract).

C. *The Class B Membership Interest*

23. As more fully set forth in the First Day Declaration, SaveSolar owns 100% of the equity of SSC SR JV Holdco, LLC, a Delaware limited liability company ("**JV HoldCo**"). JV HoldCo is not a debtor in these bankruptcy cases. In turn, JV HoldCo serves as the Class B managing member of Project Alpha TE JV, LLC ("**Project Alpha**"), a non-debtor limited liability company. Project Alpha is a tax equity joint venture into which the Debtors' solar construction projects were sold once they reached a certain degree of completion. The other member of Project Alpha is a non-debtor subsidiary of Solridge RE, LLC ("**Solridge**"). SaveSolar's membership interest in Project Alpha through JV HoldCo is referred to as the Class B Membership Interest.

24. As of the Petition Date, the Class B Membership Interest was encumbered by three potential liens or security interest. The first priority interest was, and is, held by Amalgamated Bank ("**Amalgamated**") pursuant to a Pledge and Security Agreement dated as of July 27, 2022. The Debtors are informed that the amount of Amalgamated's secured claim was $1,761,926.91 as of April 9, 2024. The second priority interest was held by Leyline pursuant to a Pledge Agreement dated April 23, 2021. The Leyline security interest was resolved at the time of the First Closing pursuant to the settlement embodied in the Sale Order. In connection with the First Closing, Leyline released its security interest in the Class B Membership Interest. The third priority lien is the tax lien of the United States of America, which arose pursuant to a notice of tax lien dated November 2, 2022. According to the proof of claim filed by the IRS, the amount of its secured claim is $609,998.99.

25. When it became apparent that the Class B Membership Interest would become an Excluded Asset, the Debtors commenced planning for its possible sale or other disposition. The Debtors' financial advisor performed a preliminary assessment of the Class B Membership Interest and determined that the asset had sufficient value to justify a second sale process. Accordingly,

on February 6, 2024, the Debtors filed their application to employ Silver Birch, Inc. and BA Securities, LLC (collectively, the "**Investment Bankers**") as their investment bankers to market and facilitate the sale of the Class B Membership Interest. *See* Docket No. 331. The Court approved the Investment Bankers' employment on February 27, 2024, effective as of January 26, 2024. *See* Docket No. 335.

26. The Debtors, through their professionals, have engaged in a lengthy marketing process for the Class B Membership Interest. The Debtors conducted negotiations with Solridge, Amalgamated, and potential purchasers of the sale of the Class B Membership Interest. SaveSolar's invest bankers eventually received a non-binding letter of intent dated October 29, 2024, expressing interest in purchasing the Class B Membership Interests free and clear of liens, claims and encumbrances (other than those of Amalgamated on the underlying assets of the entity). The proposed purchase price was $150,000 in cash, and the transaction remained subject to the preparation and negotiation of definitive documentation, as well as the purchaser's completion of due diligence. The proposed purchase price would largely be consumed by the legal, accounting and investment banking fees, as well as US Trustee fees. The net proceeds of the proposed sale, thus, would not have provided a distribution to secured or unsecured creditors. The Debtors' professionals tried to negotiate additional compensation for the estate (even agreeing to cap their fees to facilitate a transaction) so that the sale could proceed and yield some distributions to creditors. However, the parties declined to provide any additional compensation for creditors. Since the transaction did not provide any benefit to the estate, SaveSolar and its counsel ultimately concluded that spending the time and incurring the expense to negotiate definitive documentation, complete due diligence, and to prosecute a motion for a sale free and clear, was not in the best interests of the estate.

27. The Debtors expect that upon closure of the Chapter 11 Case, Amalgamated likely will seek to conduct a sale of the Class B Membership Interest pursuant to the Uniform Commercial Code. While the Debtors consider a surplus unlikely, pending final disposition of the interest, prudence dictates preservation of the interest as a asset of the estate.

### D.    *The Moxie Solar Litigation*

28. As described in the First Day Declaration, prior to the Petition Date, the contractor for one of SaveSolar's projects, Moxie Solar (as defined herein), defaulted on its obligations by failing to begin construction of a project pursuant to agreed upon project timelines, causing SaveSolar to terminate the contract. After termination, Moxie Solar refused to refund approximately $700,000 advanced by SaveSolar for equipment procurement, notwithstanding that no such equipment had been procured for the project.

29. On November 14, 2022, SaveSolar commenced Case No. 2022-CAB-005352 in the Superior Court of the District of Columbia (the "**Superior Court**") against MSI Diversified, Inc. f/k/a Moxie Solar, Inc. d/b/a Moxie Solar and Moxie Solar, L.L.C. d/b/a Moxie Solar (collectively, "**Moxie Solar**"), Lorentzen Investments, LLC ("**Lorentzen**"), and Jason R. Hall ("**Hall**" and together with Moxie Solar and Lorentzen, the "**Defendants**") for, among other things, breach of contract and breach of the duty of good faith and fair dealing (the "**Litigation**").

30. On April 2, 2024, the Superior Court entered a default judgment against defendants Moxie Solar and Hall, jointly and severally, in the amount of $696,258.09, plus costs, in favor of SaveSolar (the "**Judgment**").

31. On June 3, 2024, the Court approved the Debtors' employment of special counsel to aid in the collection of amounts owed to the Debtors under the Judgment.

32. Claims against Lorentzen remain pending at this time.

9

**Relief Requested**

33. By this Motion, the Debtors seek entry of the Proposed Order: (a) authorizing the distribution of the remaining liquid assets of the estate to holders of allowed administrative expenses as further described in the Motion; (b) authorizing Whiteford to continue pursuing collection of the Judgment and the Moxie litigation in its discretion; (c) closing the Debtors' bankruptcy cases; (d) retaining – and not abandoning – the Class B Membership Interest and the rights with respect to the Moxie Litigation and that Class B Membership Interest; and (e) granting related relief.

34. As of the date of this Motion, Whiteford holds cash deposits in its IOLTA trust account in the aggregate amount of $481,934.22, representing:

  i. The remaining balance of Whiteford's pre-petition retainer to secure payment for services rendered in connection with these bankruptcy cases, in the amount of $75,000;

  ii. Net sale proceeds on behalf of SaveSolar in the amount of $41.92;

  iii. Net sale proceeds on behalf of Alpha HoldCo in the amount of $265,119.87;

  iv. The remaining balance of funds reserved to provide additional assurance of the Purchaser's payment to Lumina Solar, Inc. in accordance with the *Order Granting Debtors' Motion for Authority to Assume and Assign Executory Contracts and Unexpired Leases* (Docket No. 233), in the amount of $45,661.83;

  v. Operating funds on behalf of SaveSolar in the amount of $12,610.20;

  vi. Operating funds on behalf of SSC 1110 Kennebec DC, LLC (a former debtor) in the amount of $10,251.00;

      vii.      Operating funds on behalf of SSC 2501 N DC, LLC (a former debtor) in the amount of $5,606.50; and

      viii.      Operating funds on behalf of SSC Devco, LLC, a wholly owned non-debtor subsidiary of SaveSolar, in the amount of $67,642.90.

35. During the course of these cases, the Debtors paid ordinary operating expenses. Accordingly, the unpaid administrative expenses are limited principally to fees and costs of the estate professionals and US Trustee fees arising from the disbursement of fee payments. Final fee applications for all estate professionals are submitted contemporaneously herewith. The total amount of unpaid professional fees and expense reimbursement requested by the professionals exceeds the amount of cash on hand. Therefore, the Debtors' estates are administratively insolvent.

36. Subject to the possibility of further adjustments as necessary to reflect actual fees and costs of administration, the Debtors propose to distribute the assets of the estate to pay the approved and allowed fees of the Debtors' professionals, as well as US Trustee fees.

37. This Motion is subject to the contemporaneous filing of final fee applications by the professionals, and the Court's ruling with respect to such applications.

38. Additionally, the Debtors propose to authorize Whiteford to continue to prosecute the Moxie litigation and the collection of the Judgement in the exercise of its discretion, and to distribute any net proceeds (after deducting fees and expenses incurred following closing of the cases) to satisfy any deficiencies in the payment of allowed administrative expenses. In the event that proceeds exceed the amount of allowed, unpaid professional fees, Whiteford will move to reopen the Debtors' bankruptcy case to seek Court approval of further distributions.

39.     Finally, the Debtors propose to retain the Class B Membership Interest. The Class B Membership Interest is subject to the secured claim of Amalgamated and the lien of the Internal Revenue Service. To ensure that the closure of the case does not prejudice the rights of Amalgamated or the IRS, the Debtors propose to include in the closure order a provision that the automatic stay is terminated as to the Class B Membership Interest, despite the provisions of Section 362(c)(1) of the Bankruptcy Code. Thus, Amalgamated and the IRS will be free to exercise their contractual and legal remedies with respect to the Class B Membership Interest upon the closure of the case. While it is unlikely that the estate will realize any value from the foreclosure or other disposition of the Class B Membership Interest, the Debtors believe that retaining, rather than abandoning, the Class B Membership Interest is in the best interest of their creditors so that the Debtors may move to reopen this case to make further distributions in the unlikely event that funds become available.

## Basis for Relief

40.     Section 350 of the Bankruptcy Code provides, in relevant part: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Normally, chapter 11 cases are closed after a plan has been confirmed and substantially consummated. *See, e.g., In re Lindemuth*, 638 B.R. 173, 177 (Bankr. D. Kan. 2022); *In re Gould*, 437 B.R. 34, 38 (Bankr. D. Conn. 2010); *In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009). However, section 350 does not expressly require that a plan be confirmed as a prerequisite to closing a chapter 11 case. In appropriate circumstances, courts have closed chapter 11 cases pursuant to section 350 despite the absence of a plan. *See, e.g., In re Essex Constr., LLC*, Case No. 16-24661-TJC (Bankr. D. Md. 2022), Docket Nos. 952 & 983 (closing chapter 11 case

prior to plan confirmation where the estate had been fully administered and all adversary proceedings had resulted in final judgments).

41.     This case presents unique circumstances warranting the closing of the Debtors' chapter 11 cases in the absence of a confirmed plan. There is no prospect of confirming a plan in this case, and the estate is administratively insolvent. Accordingly, closing the case at this juncture avoids further administrative expense and delay in this case and is in the best interest of the estate. In particular, closing, but not dismissing, this case would preserve the Debtors' right to seek to reopen the case in the event that the Debtors may realize and distribute value on account on the Class B Membership Interest or the Moxie litigation.

WHEREFORE, for the reasons set forth herein, the Debtors request entry of the Proposed Order: (1) granting this Motion; (2) closing the Debtors' chapter 11 bankruptcy cases; and (3) granting such other and further relief as the Court deems just and proper.

Dated: November 15, 2024          Respectfully submitted,

*/s/ Bradford F. Englander*
Bradford F. Englander (Bar No. 428617)
Alexandra G. DeSimone (Bar No. VA184)
**WHITEFORD, TAYLOR & PRESTON L.L.P.**
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042-4510
Telephone:    (703) 280-9081
E-Mail:         benglander@whitefordlaw.com
                 adesimone@whitefordlaw.com

*Counsel to the Debtors and Debtors in Possession*

### CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I caused a copy of the foregoing Motion to be served *via* CM/ECF upon all parties receiving notice thereby and by first-class mail or e-mail, where an e-mail address was available, on all persons on the Master Service List established pursuant to Article VI of the Court's Complex Case Procedures.

*/s/ Alexandra G. DeSimone*
Alexandra G. DeSimone
Counsel